UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AISHA POPE,

      Plaintiff,

v.

CORIZON HEALTH, KEITH
PAPENDICK, ROBERT LACY,
CLAIRE PEI, SHANTI GOPAL,
MOHAMMED AZIMI, DONNA
ROHR, RN FIORINI, RN
BRANCH, RN TINSLEY, & Ms.
ROBINSON,

      Defendants.

_____/

Case No.: 19-10870

David M. Lawson
United States District Judge

Michael J. Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION:
DEFENDANTS BRANCH, FIORINI, TINSLEY, AND ROBINSON'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 34)**

## I.  PROCEDURAL HISTORY

Plaintiff Aisha Pope filed this prisoner civil rights suit on March 25, 2019,

pursuant to 42 U.S.C. § 1983.  (ECF No. 1).  After granting Pope's application to

proceed without prepaying fees or costs, the Court dismissed a number of the

named defendants.  (ECF No. 7).  On October 14, 2019, defendants Branch,

Fiorini, Robinson, and Tinsley (referred to hereafter as "defendants") filed a

motion for partial summary judgment based on failure to exhaust administrative

remedies.  (ECF No. 34).  These defendants were nurses employed by the

Michigan Department of Corrections (MDOC) at the Women's Huron Valley

Correctional Facility (WHV), where the events alleged in the complaint took place.

Plaintiff, through counsel, responded to the motion, and defendants replied.  (ECF

Nos. 36, 41).  This matter was originally scheduling for hearing, but the parties

agreed to have the motion decided on the papers.

This matter was referred to the undersigned for all pretrial matters on

December 30, 2019.  (ECF No. 43).  The motion for partial summary judgment is

now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendants' partial motion for summary judgment be **GRANTED**.

## II.    FACTUAL BACKGROUND

The general facts alleged in Pope's complaint were adequately summarized

in this Court's Opinion and Order dismissing some of the defendants (ECF No. 7),

as follows:

> This case focuses on events that occurred while
> Pope was incarcerated at WHV. She alleges that from
> approximately 2016 to 2018, she was severely sick,
> experienced excessive pain, and began losing blood.
> Although she was given iron supplements and over-the-
> counter medication, the medical staff allegedly delayed
> testing to find the source of her blood loss. Pope further
> alleges that the defendants ignored her symptoms and
> refused to send her out of the correctional facility to get
> medical help. She continued to experience rectal bleeding

and severe pain and was finally diagnosed with invasive colon cancer.

Pope claims that the delays and denial of proper medical care amounted to cruel and unusual punishment under the Eighth Amendment to the Constitution. She further alleges that the defendants deprived her of due process, subjected her to retaliation for filing complaints against the defendants, and discriminated against her. She seeks a preliminary and permanent injunction against the defendants' practices and omissions; remedial action concerning the defendants' policies and practices; money damages, attorney fees, and costs; and any other relief that the Court deems necessary.

(ECF No. 7, PageID.53).

Pope made specific allegations against the moving defendants, including the following. She alleges that on June 6, 2017, nurse Fiorini ignored her complaint of chest pain and bleeding from her rectum, and would only see Pope for heartburn if Pope paid $5. (ECF No. 1, PageID.9, ¶ 22). In May 2018, she alleges that Fiorini interfered with another nurse's assessment of plaintiff's chest pain to avoid doing her duty and reporting her condition to the on-call doctor. (*Id.* at PageID.19, ¶ 88). When Pope made the same complaints later to another nurse, nurse Branch said the chest pain and bleeding were caused by stress and called her a drama queen. (*Id.* at PageID.11, ¶ 33). Sometime in August 2017, Branch refused to talk to Pope about blood in her stool. (*Id.* at PageID.13, ¶ 49). She alleges that on June 13, 2017, she spoke with nurse Tinsley about bleeding from her rectum, but Tinsley only stated that she was already being treated for that and that he did not do preventative care.

(*Id.* at PageID.10, ¶ 26).  On January 24, 2018, nurse Robinson called Pope out for genetic testing and purposely left out vital information that would have made her the primary party responsible for payment.  It appears that, if she was not the primary party, her allegation is that MDOC would have had ownership of the results.  (*Id.* at PageID.17, ¶ 69).

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be

construed in the light most favorable to the non-moving party. *Matsushita Elec.*
*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,
the burden of demonstrating the existence of such an issue shifts to the non-moving
party to come forward with "specific facts showing that there is a genuine issue for
trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party
opposing a motion for summary judgment must make an affirmative showing with
proper evidence and must "designate specific facts in affidavits, depositions, or
other factual material showing 'evidence on which the jury could reasonably find
for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).
In order to fulfill this burden, the non-moving party need only demonstrate the
minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S.
at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).
However, mere allegations or denials in the non-movant's pleadings will not
satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving
party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute
about a material fact, that is, if the evidence in the case "is such that a reasonable
jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.
Such a determination requires that the Court "view the evidence presented through

the prism of the substantive evidentiary burden" applicable to the case.  *Id*. at 254.

Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of

the evidence, on a motion for summary judgment the Court must determine

whether a jury could reasonably find that the plaintiff's factual contentions are true

by a preponderance of the evidence.  *See id.* at 252-53.  Finally, if the nonmoving

party fails to make a sufficient showing on an essential element of its case with

respect to which it has the burden of proof, the movant is entitled to summary

judgment.  *Celotex*, 477 U.S. at 323.  The Court must construe Rule 56 with due

regard not only for the rights of those "asserting claims and defenses that are

adequately based in fact to have those claims and defenses tried to a jury," but also

for the rights of those "opposing such claims and defenses to demonstrate in the

manner provided by the Rule, prior to trial, that the claims and defenses have no

factual basis."  *Id*. at 327.

       B.     <u>Exhaustion of Administrative Remedies</u>

           1.     Legal Standards

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  Section 1997e(a)'s

"exhaustion requirement applies to all prisoners seeking redress for prison

6

circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.  In

*Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to

exhaust is an affirmative defense under the PLRA," and "inmates are not required

to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S.

at 216.  "Compliance with prison grievance procedures ... is all that is required by

the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218.  "Congress has provided

in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought

and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741

n. 6 (2001).  "[P]roper exhaustion of administrative remedies is necessary."

*Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

  In *Jones v. Bock*, the Supreme Court also held that the burden rests on the

defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an

affirmative defense.  *Jones*, 549 U.S. at 218.  Accordingly, exhaustion is satisfied

if plaintiff complied with the applicable MDOC grievance procedure and

defendants bear the burden of showing otherwise.  *Kramer v. Wilkinson*, 226 Fed.

Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of

specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Here, defendants bear the burden of proof on their affirmative defense of failure to exhaust administrative remedies. "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*, 2010 WL 1286256, *1 (W.D. Mich. 2010).

2.     MDOC Grievance Procedure

The defendants provide the administrative grievance process applicable to plaintiff's claims. Pursuant to MDOC policy directive 03.02.130 entitled

"Prisoner/Parolee Grievances," there are four stages to the grievance process that a prisoner must follow before seeking judicial intervention, each with specific time limits. (ECF No. 34-2, PageID.234-40, Ex. A, MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007)). First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue. *Id*. ¶ P. If the issue is not resolved, the prisoner may then file a Step I grievance, which must be accomplished within five business days of the attempted verbal resolution. *Id*. ¶¶ P, V. If the prisoner is not satisfied with the Step I outcome, or he does not receive a timely response, he must file a Step II appeal within 10 business days of the response, or if, no response was received, within 10 business days of when the response was due. *Id*. ¶ BB. If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days of receiving the response, or if no response is provided, within 10 business days of when it was due. The Step III response ends the administrative process. *Id*. ¶ FF.

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved and must also include the "[d]ates, times, places, and names of all those involved in the issue being grieved." *Id*. ¶ R. A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed

by the grievant.  *Id*. ¶ G.  A grievance may also be rejected if the grievance is

untimely but may not be rejected if there is a valid reason for the delay.  *Id*. ¶ G.4.

Grievances and grievance appeals at all steps are considered filed on the date

sent by the grievant.  The total grievance process from the point of filing a Step I

grievance to providing a Step III response must generally be completed within 120

calendar days unless an extension has been approved in writing by the Grievance

Coordinator at Step I and/or Step II.  According to the policy, an extension for a

Step I or II response may not exceed 15 business days unless the grievance falls

within the jurisdiction of the Internal Affairs Division.  The Grievance Coordinator

is required to immediately notify the grievant in writing whenever an extension has

been approved; the extension must also be noted in the grievance response.  *Id*.

¶ S.

### 3.    Discussion

The MDOC defendants move for partial summary judgment solely on the

basis of failure to exhaust administrative remedies.  (ECF No. 34).  The parties

have narrowed the issues.  Pope agrees that she did not exhaust administrative

remedies on her claims against defendant nurse Robinson, and agrees that

Robinson should be dismissed from this case without prejudice.  In light of this

concession, the undersigned recommends dismissing Robinson from this case

without prejudice.

In their brief, the defendants discuss eight grievances that relate to the complaint allegations.  In response, Pope agrees that four of those grievances—WHV-17-08-2557-28e, WHV-17-07-3091-12D3, WHV-18-05-1524-12D, and WHV-18-06-1927-12D—involve allegations against the Corizon defendants, not the MDOC nurses who filed this motion for partial summary judgment, and thus are irrelevant to the resolution of this motion.  (ECF No. 36, PageID.551).  The parties agree that Pope exhausted administrative remedies on two of her claims against nurse Fiorini—her claim that Fiorini wrongfully charged her for a visit to health care (grievance WHV-17-06-2521-1G) and her claim that Fiorini interfered with another nurse's assessment and instructing the nurse not to call the on-call doctor for Pope as Pope was coughing and spitting up blood (grievance WHV-18-06-1921-12E).  (*See* ECF No. 36, PageID.552).  The remaining two grievances—WHV-17-05-2328-28e ("grievance 2328") and WHV-17-08-3412-28e ("grievance 3412")—are in dispute and will be addressed in turn.[1]

### 1.    Grievance 2328

Defendants argue that grievance 2328 did not exhaust administrative remedies because plaintiff's appeal at Step III was untimely.  (ECF No. 34,

---

[1] At the outset of her response, Pope argues that defendants' motion should be denied because they did not provide pin citations to the record when discussing the various grievances. (ECF No. 36, PageID.550-51).  This failure, according to Pope, amounts to a failure to meet their burden of proof on the exhaustion issue.  The undersigned agrees that defendants' failure to provide pin citations to the record created an inconvenience to the plaintiff and the Court in addressing defendants' motion.  But, it is not cause to deny the motion.

PageID.227-28).  In the grievance, Pope alleges that in May 2017, she had blood in

her stool.  A corrections officer called nurse Branch on plaintiff's behalf, but

Branch said plaintiff would need to send a kite, that she was with a "chest pain

inmate" at that time.  Pope was "floored mentally" by Branch's response.  (ECF

No. 34-3, PageID.374).  Pope filed the grievance on May 19, 2017, and MDOC

received the Step I grievance on May 25, 2017.

The grievance was denied and returned to plaintiff on June 19, 2017.  (ECF

No. 375).  The grievance coordinator received plaintiff's Step II appeal on July 21,

2017.  (ECF No. 34-3, PageID.372).  The prison denied her appeal on August 3,

2017.  (ECF No. 34-3, PageID.373).  According to the grievance documents, the

response was returned to plaintiff on August 14, 2017.  (ECF No. 34-3,

PageID.372).  At Step III, plaintiff submitted her appeal on September 18, 2017.

The appeal was denied as untimely.  According to the respondent, her appeal was

due by August 29, 2017, not in September.  (ECF No. 34-3, PageID.371).

Pope argues that MDOC's response to her Step II appeal was "insufficient"

in that it was untimely, and because MDOC did not follow its policy, she should

not be penalized for her untimely appeal.  Pope's Step II appeal was received on

July 21, 2017.  The due date for the prison's response is 15 business days after

receipt of the grievance, unless an extension is granted.  (ECF No. 36,

PageID.555).  No extension was granted on this grievance.  Accordingly, the

prison's response was due on August 11, 2017, but Pope says she did not receive the response until August 17th, although the response states it was returned to plaintiff on August 14th.  (*Id.* at PageID.556).  Since MDOC did not follow its own procedures, Pope argues that administrative remedies should be deemed exhausted. (*Id.*).  Pope cites Sixth Circuit law which holds that "[i]t is well established that 'administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.'"  (*Id.*) (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004)).

In reply, the defendants say that it does not matter whether MDOC's response was untimely at Step II (although they insist plaintiff's Step II appeal itself was untimely) because "A prisoner must file to the next Step within 10 business days of receiving the Step response, or within 10 business days of when it should have been received."  (ECF No. 41, PageID.610).  Pope's Step III appeal was not received until September 18, 2017, more than 10 business days after she received her Step II response, so it was properly rejected as untimely.

In the view of the undersigned, the defendants are correct that the Step III appeal was untimely.  Under MDOC prison policy, an inmate is not excused from completing the grievance process through Step III, even where she has received a late response or did not received a response at all.  The Policy Directive, PD

13

03.02.130, expressly provides that the inmate continue the grievance process.

Paragraph T states:

> If a grievant chooses to pursue a grievance which has not
> been responded to by staff within required time frames,
> including any extensions granted, the grievant may
> forward the grievance to the next step of the grievance
> process within ten business days after the response
> deadline expired, including any extensions which have
> been granted.

(ECF No. 34-2, PageID.237).  Then, paragraph FF states:

> A grievant may file a Step III grievance if s/he is
> dissatisfied with the Step II response or does not receive
> a timely response.  To file a Step III grievance, the
> grievant must send a completed Step III grievance, using
> the Prisoner/Parolee Grievance Appeal form (CSJ-247B),
> to the Grievance and Appeals Section within ten business
> days after receiving the Step II response or, if no
> response was received, within ten business days after the
> date the response was due, including any extensions.

(ECF No. 34-2, PageID.239).

According to the grievance policy, Pope had ten business after receiving the

Step II response or from when the response was due.  Even taking the date plaintiff

received the response (after the date it was due), the appeal was untimely.

Although the appeal form indicates that the Step II response was returned on

August 14, 2017, she says she did not get it until August 17th.  Even assuming the

August 17th date, her Step III appeal was not turned in until September 18, 2017,

more than ten business days after receiving the Step II response, and thus untimely. *Woodford v. Ngo, supra*, makes it clear that "proper exhaustion" requires a prisoner to fully comply with the institution's grievance policy. Because Pope did not fully comply with the grievance policy, this grievance does not serve to exhaust administrative remedies for the claims stated in the grievance.

The authority Pope relies on is factually distinguishable. In *Risher*, which involved a federal inmate, the plaintiff's efforts to exhaust were frustrated by the Bureau of Prisons' ("BOP's") failure to deliver the Regional Director's grievance response to him, which prevented him from submitting that response to the Central Office (the next step in the grievance process), as required by BOP regulations. The plaintiff nonetheless attempted to follow the regulations by submitting an appeal that treated the Regional Director's failure to respond as a denial of his grievance. Quoting *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004), the Sixth Circuit noted that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." 639 F.3d at 240.

In *Palmer v. Flores*, 3 F. Supp. 3d 632 (E.D. Mich. 2014), which relied on *Risher*, the plaintiff, who was in administrative segregation, did not receive a response to his Step I grievance, and was unable to obtain the forms for an appeal to Step II. Citing *Boyd*, the Court found that administrative remedies were

15

exhausted when the MDOC did not timely respond to the plaintiff's Step I grievance. *Id.* at 637.

The circumstances are different here. Pope was not prevented from proceeding to Step III because of the untimely Step II response. She does not allege that the prison would not give her a Step III form and the MDOC grievance policy does not require a Step II response before the inmate can move on to Step III, as demonstrated above. Rather, the inmate must move on to Step III, even if the prison does not respond at Step II under the policy. And finally, both cases (and plaintiff) rely on *Boyd*. "*Boyd* no longer excuses an inmate from completing the grievance process through Step III, even where he or she has not received a response, because the Policy Directive explicitly makes further administrative proceedings available even in the absence of a timely response at Step I or Step II." *Bennett v. Michigan Dep't of Corr.*, 2017 WL 3208591, at *7, n. 9 (E.D. Mich. July 24, 2017), *report and recommendation adopted* 2017 WL 4230645 (E.D. Mich. Sept. 25, 2017). In short, plaintiff's authority does not stand for the proposition that a late response from the prison, by itself, discharges an inmate of her responsibility to comply with the grievance policy to exhaust administrative remedies.

2. Grievance 3412

Defendants argue that grievance 3412 does not serve to exhaust administrative remedies because plaintiff's Step III appeal was untimely. (ECF No. 34, PageID.229). Pope filed this grievance on August 15, 2017. She grieves a number of individuals, including Branch, Tinsley, and Fiorini, for violation of the Eighth Amendment for deliberate indifference to her medical needs. Specifically, she says the individuals did not inform her of test results or vitals, and ignored signs of medical issues which prevented early detection and treatment of her colon cancer. (ECF No. 34-3, PageID.329). This grievance is not exhausted for the same reason grievance 2328 was not exhausted, as discussed below.

The grievance was denied at Step I. (ECF No. 34-3, PageID.330). The grievance coordinator received Pope's Step II appeal on November 1, 2017. (ECF No. 34-4, PageID.327). The prison extended its time to respond to the Step II appeal to December 12, 2017. (ECF No. 34-3, PageID.328, 331). The Step II appeal was denied. On the Step II appeal form, the respondent indicated that the response was returned to Pope on November 30, 2017. (ECF No. 34-3, PageID.327). However, there is a handwritten note from plaintiff on the memorandum giving MDOC an extension to respond to the Step II appeal stating that she did not receive the Step II response until December 28, 2017 at mail call. (ECF No. 34-3, PageID.331; ECF No. 36, PageID.552). Not included in MDOC's attachment of grievances, but included in Corizon defendants' motion to dismiss is

a cover page to plaintiff's Step III appeal in which she again indicates that she did

not get the Step II response until December 28, 2017.  (ECF No. 35-2,

PageID.503).

Pope's Step III appeal was rejected as untimely.  According to the response,

Pope's appeal was to be received by December 21, 2017,[2] but was not received

until January 12, 2018.[3]  (ECF No 34-3, PageID.326).

Pope argues that her Step III appeal was timely—it was filed within 10

business days of receiving the Step II response on December 28, 2017, accounting

for holidays and weekend days.  (ECF No. 36, PageID.554).  Defendants counter

the argument with the affidavit of Richard D. Russell, the Hearings

Administrator/Manager of the Grievance Section of MDOC.  Russell avers that,

based on the grievances in the record, Pope received the Step II response on

November 30, 2017, and had 10 business days from that date to file her appeal, or

by December 14, 2017.[4]  (ECF No. 41-2, PageID.616, ¶ 5).  Plaintiff insists that

her notation that she did not receive the Step II response until December 28th and

the prison's insistence that she received the response November 30th creates a

question of material fact and is determinative of when her Step III appeal was due.

---

[2] It is not clear why the prison calculated a due date that is 15 business days from the Step II response due date, rather than 10 days per the rule, discussed below.

[3] The drafter of the Step III response mistakenly wrote that the prison did not receive plaintiff's Step III appeal until January 12, 2017.  The appeal was received January 12, 2018.

[4] There is no explanation why this date conflicts with the Step III denial which states that the appeal was due by December 21, 2017.

Even if plaintiff received the Step II response on December 28th, and not November 30th or December 12th (when it was due), her Step III appeal is, indeed, untimely according to MDOC grievance policy.  Again, paragraph FF states:

> A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response.  To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.

(ECF No. 34-2, PageID.239).

Her Step III appeal was due within 10 business days of the Step II response, or if no response is received, then within 10 business days *after the date the response was due*.  This paragraph does not give inmates the choice of waiting weeks, if not months, for a Step II response before filing a Step III appeal.  A reasonable reading of this policy is that an inmate has 10 business days from receiving the response to file the appeal, but must file the appeal no later than at least 10 business days from the day the response was due if no response was forthcoming within that time.  If the prison returns a late response, the prisoner does not get a "new" 10-day period in which to file an appeal.  An inmate is not excused "from completing the grievance process through Step III, even where he or she has not received a response, because the Policy Directive explicitly makes

further administrative proceedings available even in the absence of a timely response at Step I or Step II." *Bennett v. Michigan Dep't of Corr.*, 2017 WL 3208591, at *7, n. 9 (E.D. Mich. July 24, 2017), *report and recommendation adopted* 2017 WL 4230645 (E.D. Mich. Sept. 25, 2017).

An example may help to illustrate the point.  Say the prison received a Step II grievance appeal January 1, 2020.  The prison's response, according to its policy, is due 15 business days after receipt of the grievance, or by January 22nd. (ECF No. 34-1, PageID.441, ¶ CC).  If the prison returns the response to the inmate between January 1st and January 22nd, the inmate has 10 business days from receipt to file an appeal at Step III.  Or, if on January 22nd, the inmate still has not received the response, the inmate has 10 business days from the 22nd to file an appeal.  In either case, the Step III appeal would be timely.  If, however, the inmate gets the response on January 23rd or any later date, prison policy does not give the inmate another 10-business day deadline.  For example, say the inmate did not file a Step III appeal while waiting for the Step II response, and received the Step II response February 12th.  By this date, the Step III appeal deadline is long past; it was due February 5th, 10 business days from the date the response was due. The inmate then files a Step III appeal two days after getting the Step II response, on February 14th.  This appeal is untimely under the rule.  The absolute latest a Step III appeal can be filed and be timely is within 10 business of the day the

response was due, or if the response came on that last date. Anything later is in violation of the policy.

So, plaintiff's argument here that her appeal was timely because she filed it within 10 business days of receipt of the Step II response is unavailing. The Step II response, according to her, did not get to her until December 28th. But it was due December 12th at the latest according to the extension. Under paragraph FF of the policy, her appeal was due within 10-business of the due date for the response, including any extensions. Accordingly, her Step III appeal was due before January 2018, regardless of whether she got the Step II response after December 12th. Since plaintiff did not *properly* exhaust her administrative remedies on this grievance, grievance 3412 is not exhausted.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants Branch, Fiorini, Robinson, and Tinsley's partial motion for summary judgment (ECF No. 34) be **GRANTED**, and that defendant Robinson be dismissed from this case without prejudice pursuant to the parties' agreement.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 6, 2020                           s/Michael J. Hluchaniuk
                                            Michael J. Hluchaniuk
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 6, 2020, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/ Durene Worth</u>
Case Manager
(810) 341-7881
durene_worth@mied.uscourts.gov