UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AISHA POPE,

      Plaintiff,

v.

CORIZON HEALTH, KEITH
PAPENDICK, ROBERT LACY,
CLAIRE PEI, SHANTI GOPAL,
MOHAMMED AZIMI, DONNA
ROHR, RN FIORINI, RN
BRANCH, RN TINSLEY, & Ms.
ROBINSON,

      Defendants.

_____/

Case No.: 19-10870

David M. Lawson
United States District Judge

Michael J. Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION:
DEFENDANTS CORIZON HEALTH, INC., ROBERT LACY, KEITH
PAPENDICK, CLAIRE PEI, MOHAMMED AZIMI, SHANTHI GOPAL, &
DONNA ROHRS' MOTION TO DISMISS (ECF No. 35)**

I.    **PROCEDURAL HISTORY**

Plaintiff Aisha Pope filed this prisoner civil rights suit on March 25, 2019,

pursuant to 42 U.S.C. § 1983. (ECF No. 1). After granting Pope's application to

proceed without prepaying fees or costs, the Court dismissed a number of the

named defendants. (ECF No. 7). On October 18, 2019, defendants Corizon

Health, Inc., Dr. Robert Lacy, Dr. Keith Papendick, Dr. Claire Pei, Dr. Mohammed

Azmimi, Dr. Shanthi Gopal, and P.A. Donna Rohrs, (referred to hereafter as "defendants") filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the issues of exhaustion of administrative remedies and failure to state a claim. (ECF No. 35). These defendants were supervising, physicians, physicians and a physician's assistant employed by Corizon at the Women's Huron Valley Correctional Facility (WHV), where the events alleged in the complaint took place. Plaintiff, through counsel, responded to the motion, and defendants replied. (ECF Nos. 37, 39). This matter was originally scheduling for hearing, but the parties agreed to have the motion decided on the papers.

This matter was referred to the undersigned for all pretrial matters on December 30, 2019. (ECF No. 43). The motion to dismiss is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED IN PART, DENIED IN PART**.

## II.   FACTUAL BACKGROUND

The general facts alleged in Pope's complaint were adequately summarized in this Court's Opinion and Order dismissing some of the defendants (ECF No. 7), as follows:

> This case focuses on events that occurred while Pope was incarcerated at WHV. She alleges that from approximately 2016 to 2018, she was severely sick, experienced excessive pain, and began losing blood.

> Although she was given iron supplements and over-the-counter medication, the medical staff allegedly delayed testing to find the source of her blood loss. Pope further alleges that the defendants ignored her symptoms and refused to send her out of the correctional facility to get medical help. She continued to experience rectal bleeding and severe pain and was finally diagnosed with invasive colon cancer.
>
> Pope claims that the delays and denial of proper medical care amounted to cruel and unusual punishment under the Eighth Amendment to the Constitution. She further alleges that the defendants deprived her of due process, subjected her to retaliation for filing complaints against the defendants, and discriminated against her.

(ECF No. 7, PageID.53).  She seeks monetary damages and injunctive relief.

Where appropriate, the undersigned will discuss the specific allegations made against the moving defendants, below.

## III.    ANALYSIS AND RECOMMENDATIONS

### A.    Exhaustion of Administrative Remedies

#### 1.    Standard of Review[1]

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the

---

[1] Defendants request that their motion, even as it pertains to the issue of exhaustion, be treated as a motion to dismiss, not a motion for summary judgment.  Or, if treated as a motion for summary, they request permission to file a second motion for summary judgment at a later date. The undersigned will assess exhaustion under the principles of summary judgment.  It has been recently concluded in a published opinion that such motions should be analyzed under summary judgment standards.  *See Anderson v. Jutzy*, 175 F.Supp.3d 781, 788 (E.D. Mich. 2016).  The remaining arguments will be addressed under Fed. R. Civ. P. 12(b)(6) standards. If at some point in the future defendants wish to file a second motion for summary judgment, they could seek leave of the court; leave will not be granted at this time.

movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party

asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record...; or (B) showing that

the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact."

Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment

is appropriate is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be

construed in the light most favorable to the non-moving party.  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-moving

party to come forward with "specific facts showing that there is a genuine issue for

trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party

opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due

5

regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

### 2. Legal Standards for Exhaustion of Remedies

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218. "Congress has provided

in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains

evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Here, defendants bear the burden of proof on their affirmative defense of failure to exhaust administrative remedies. "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*, 2010 WL 1286256, *1 (W.D. Mich. 2010).

3.    MDOC Grievance Procedure

The MDOC provides the administrative grievance process applicable to plaintiff's claims. Pursuant to MDOC policy directive 03.02.130 entitled "Prisoner/Parolee Grievances," there are four stages to the grievance process that a prisoner must follow before seeking judicial intervention, each with specific time limits. (ECF No. 35-1, PageID.436-42, Ex. A, MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007)). First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue. *Id*. ¶ P. If the issue is not resolved, the prisoner may then file a Step I grievance, which must be accomplished within five business days of the attempted verbal resolution. *Id*. ¶¶ P, V. If the prisoner is not satisfied with the Step I outcome, or he does not receive a timely response, he must file a Step II appeal within 10 business days of

8

the response, or if, no response was received, within 10 business days of when the response was due.  *Id*. ¶ BB.  If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days of receiving the response, or if no response is provided, within 10 business days of when it was due.  The Step III response ends the administrative process.  *Id*.  ¶ FF.

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved and must also include the "[d]ates, times, places, and names of all those involved in the issue being grieved."  *Id*.  ¶ R. A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant.  *Id*. ¶ G.  A grievance may also be rejected if the grievance is untimely but may not be rejected if there is a valid reason for the delay.  *Id*. ¶ G.4.

Grievances and grievance appeals at all steps are considered filed on the date sent by the grievant.  The total grievance process from the point of filing a Step I grievance to providing a Step III response must generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II.  According to the policy, an extension for a Step I or II response may not exceed 15 business days unless the grievance falls within the jurisdiction of the Internal Affairs Division.  The Grievance Coordinator is required to immediately notify the grievant in writing whenever an extension has

been approved; the extension must also be noted in the grievance response.  *Id*.
¶ S.

      4.     Discussion

To support their argument that Pope failed to exhaust all but two of her
claims against Corizon defendants, defendants created a chart listing the grievances
taken through the three-step process relevant to the claims against them.  (ECF No.
35, PageID.425-26).  The two claims defendants agree are fully exhausted are the
claim against Dr. Pei for denial of adequate care for plaintiff's concerns with low
iron and anemia, and the claim against Dr. Papendick for inappropriately deferring
an oncology follow-up appointment.  This leaves five grievances in issue.

      a.     The "Resolved" Grievances

Two grievances were resolved at Step II but plaintiff nevertheless took them
through Step III.  Defendants contend that since these grievances were resolved,
they do not exhaust administrative remedies for the claims contained within them.
These grievances are WHV-18-03-0761-12F ("0761") and WHV-18-05-1524-12D
("1524").  Grievance 0761 is about not receiving prescribed vitamin E cream for
scarring after a surgical procedure.  Instead of vitamin E cream, she was given
Eucerin cream which she says was insufficient for the purpose of healing scars and
did not list vitamin E among the ingredients.  (ECF No. 35-2, PageID.494).  The
grievance was resolved at Step II, wherein the prison acknowledged that she was

not getting vitamin E cream because their supplier did not carry it, so she was given Eucerin cream instead. (ECF No. 35-2, PageID.491, 493). Pope did not agree that the grievance was resolved, so she appealed to Step III. The Step III appeal was considered "resolved." (*Id.* at PageID.491). Grievance 1524 was Pope's sixth attempt to reach Dr. Papendick about his denying offsite care for her cancer and denying or delaying genetic testing related to her colon cancer. (ECF No. 35-2, PageID.486). The prison considered the grievance resolved at Step II because Pope did in fact receive the genetic testing. (*Id.* at PageID.485). The grievance was denied at Step III; the Step III respondent said the grievance was appropriately addressed at Step I and that she had a treatment plan and testing that would continue to be monitored and updated. (*Id.* at PageID.483).

Defendants cite no authority for the proposition that a resolved grievance does not exhaust administrative remedies. Rather, the opposite is true. It is well-established that all an inmate need do to exhaust remedies is to take her grievance through the three Step process without procedural error, i.e. to "properly exhaust." *Woodford*, 548 U.S. at 90-93. If the prison resolves the grievance before the third step, the inmate need not go further. MDOC Policy specifically provides that a prisoner "*may* file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response." (ECF No. 35-1, PageID.440) (Mich. Dep't of Corr. Policy Directive 03.02.130 ¶¶ BB (emphasis

added)). Likewise, MDOC Policy specifically provides that a prisoner "*may* file a Step III grievance if s/he is dissatisfied with the response received at Step II or if s/he did not receive a timely response." (*Id.* at PageID.441) (Mich. Dep't of Corr. Policy Directive 03.02.130 ¶¶ FF (emphasis added)).  "A plausible reading of these provisions is that a prisoner is not required to pursue a matter through all three steps of the grievance process if the matter is resolved to his satisfaction prior to Step III." *Black v. Henley*, 2017 WL 1437881, at *3 (W.D. Mich. Mar. 27, 2017); *see also Annabel v. Heyns*, 2013 WL 4805690, at *5 (E.D. Mich. Aug. 7, 2013).

But Pope was not satisfied with the responses received at Step II on both grievances, so she appealed to Step III.  These appeals were addressed by the prison and no procedural errors were noted.  In other words, Pope exhausted both grievances through all three Steps.  Grievances 0761 and 1524 are fully exhausted.

> b.    Grievance WHV-18-11-3595-28e ("3595")

Defendants believe that grievance 3595 does not exhaust administrative remedies despite the fact that it was taken through all three Steps of the grievance process because, according to the prison, plaintiff impermissibly grieved multiple unrelated issues.  In this grievance, Pope grieves Dr. Pei for making "insensitive, degrading remarks" during her appointment on November 13, 2018.  (ECF No. 35-2, PageID.470).  Specifically, Pope was questioning Dr. Pei's statement that it was ok to have blood in her urine, when Dr. Pei allegedly said that Pope was getting

better healthcare at the prison than a homeless person would.  Pope was devastated by this comment.  She said to resolve the grievance, she wanted Dr. Pei to receive sensitivity training and to be disciplined.

According to the Step I response, the November 13th appointment was for a thumb injury.  The Step I respondent believed that Pope raised numerous issues in this grievance unrelated to her thumb injury and that the grievance was about a conversation that was not witnessed.[2]  Accordingly, the grievance was denied.  (*Id.* at PageID.471); (*see also* ECF No. 35-1, PageID.437 – MDOC Policy Directive 03.02.130, ¶ G(1)).  Pope appealed to Step II; the Step II response is not in the record.  (*Id.* at PageID.469).  Her Step III appeal was reviewed and rejected without elaboration.  (*Id.* at PageID.468).

As set forth in *Burnett v. Howard,* 2010 WL 1286256 (W.D. Mich. Mar. 30, 2010), "[a]s long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." While this is true, "the Court is not required to blindly accept the state's application of the procedural rule."  *Reeves v. Salisbury*, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), *report and recommendation adopted in pertinent part*, 2012 WL

---

[2] It is not clear that MDOC policy prohibits an inmate from grieving a conversation had without the presence of a witness.

3151594 (E.D. Mich. Aug. 2, 2012).  The Supreme Court held in *Woodford*, 548 U.S. at 90, that the failure to "properly" exhaust bars suit in federal court. Proper exhaustion of administrative remedies means "using all steps that the agency holds out, and doing so properly."

In the view of the undersigned, MDOC and defendants view this grievance too broadly.  To be clear, the prison and defendants believe Pope was grieving an issue related to her thumb injury and the separate issue of Dr. Pei's comments to her in response to questioning about blood in her urine.  The undersigned does not read the Step I grievance the same way.  Though the comments were allegedly made during the doctor visit for her thumb injury on November 13th, it is clear that Pope was not grieving any issue about her thumb or the treatment for her thumb. She was grieving comments made to her during that appointment. Those comments are not an "unrelated issue"—they are the only issue in the grievance.

Thus, in this case, the prison's rejection of grievance 3595 does not preclude a finding that the grievance is fully exhausted.  *See Nelson v. Walsh*, 2017 WL 1212836, at *4 (E.D. Mich. Feb. 17, 2017) (Although the grievance was rejected at Step I as vague or illegible, the court disagreed.  The Court noted that an improper rejection would constitute exhaustion) (citing *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016)); *see also Townsel v. Raupp*, 2013 WL 6842474, at *6 (E.D. Mich. Dec. 27, 2013) ("An improper

rejection of a grievance can be a basis for deeming that grievance exhausted.") (citing *LaFountain v. Martin*, 334 Fed. Appx. 738, 741 (6th Cir. 2009)).  The prison's reason for the rejection was improper.  Because Pope took grievance 3595 through all three Steps, and did so properly, this grievance is exhausted.

### c.   Grievance WHV-17-06-2557-28e ("2557")

Grievance 2557, filed June 8, 2017, was rejected as untimely at Step III, but plaintiff believes there is a question of material fact as to timeliness.  This grievance is about Pope's iron deficiency and anemia.[3]  She states that she had been trying for over a year to get Dr. Pei to treat her for her symptoms, which included bruising, bleeding, and skin color changes.  (ECF No. 35-2, PageID.539). The grievance was rejected at Step I because she was receiving treatment for the issues complained of.  (*Id.* at PageID.540).  Her Step II appeal was denied; the Step I decision was upheld.  (*Id.* at PageID.538).  Prison personnel indicated that the Step II response was returned to plaintiff on August 14, 2017.  (*Id.* at PageID.537). She appealed to Step III on September 18, 2017.  That appeal was denied as untimely—her appeal was due August 29th, not September 18th.  (*Id.* at PageID.536).

---

[3] Grievance 3091, exhausted as discussed above, is related to this grievance in that it is against Dr. Pei for allegedly inadequate care of iron deficiency or anemia.  (ECF No. 35-2, PageID.511).

Plaintiff believes that certain notations made by her on the Step II response form indicate that she did not receive the Step II response until sometime on or after September 13th, but her argument does not exactly track her handwritten notations.  She wrote on the bottom: "Still waiting on Step III as of 9/13/2017." She argues that this means she was still waiting for documentation necessary to file her Step III appeal, but she does not suggest what this documentation was nor does she mention any additional documentation in her Step III appeal. Additionally, at the top of the Step II response, she wrote, "Need Step III" and "8/17/18."  (ECF No. 35-2, at PageID.538).  These notations create an issue of fact according to plaintiff.  Notably, though, she did not provide a sworn statement to support that these notations were in fact made by here or to explain what she meant with these notations.  She relies only on the notations and her argument. (ECF No. 37, PageID.571).

In the view of the undersigned, a reasonable jury could not read these notations and conclude that the Step II response was given to plaintiff sometime in September.  Rather, the evidence suggests she got the response in August.  It is not clear what documentation from Step III she was waiting for on August 17th, but she apparently had the Step II response then as she dated the response "8/17/18." The time for her Step III appeal began upon receipt of the Step II response— August 17th (or from the date the response was due), although prison personnel

indicated that plaintiff got the response on the 14th.  Even if she received it on the 17th, instead of the 14th, her September 18th Step III appeal was well beyond the 10-business day timeline to file the Step III appeal, and thus the appeal was untimely.  This grievance was not properly exhausted.

          d.      Grievance WHV-17-08-3412-28e ("3412")

In Grievance 3412, plaintiff names MDOC defendants Branch, Tinsley, and Fiorini, as well as, and importantly for purposes of this motion, defendants Dr. Azimi, Dr. Pei, Dr. Gopal, "Corizon Health provider," and "all or any medical staff or company responsible for or contributed to my condition and care."  (ECF No. 35-2, PageID.500).  She grieves their "inhumane treatment" and deliberate indifference to her medical care and cancer diagnosis.  She says signs of cancer were ignored and her cancer was not diagnosed as soon as it should have been. The undersigned's conclusion on the MDOC defendants' partial motion for summary judgment—that this grievance is not exhausted because it was untimely—applies equally here.

The grievance was rejected at Step III as untimely.  (ECF No. 35-2, PageID.497).  According to the appeal response, Pope's appeal was to be received by December 21, 2017, but was not received until January 12, 2018.[4]  Pope argues

---

[4] The drafter of the Step III response mistakenly wrote that the prison did not receive plaintiff's Step III appeal until January 12, 2017.  The appeal was received January 12, 2018.

that her Step III appeal was timely—it was filed within 10 business days of receiving the Step II response.  She says she got the Step II response on December 28, 2017.  Support for this contention lies in her handwritten notation made on a grievance document.  She indicated that she received the Step II response on that date at mail call.  She also points to a cover letter to her Step III appeal in which she wrote that she received the Step II response on December 28th.  (ECF No. 35-2, PageID.502, 503).  Accounting for holidays and weekend days, she insists her Step III appeal was timely filed.  (ECF No. 37, PageID.572-73).

Even if plaintiff received the Step II response on December 28th, and not November 30th or December 12th (when it was due), her Step III appeal is, indeed, untimely according to MDOC grievance policy.  Paragraph FF states:

> A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response.  To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.

(ECF No. 34-2, PageID.239).

Her Step III appeal was due within 10 business days of the Step II response, or if no response is received, then within 10 business days *after the date the response was due*.  This paragraph does not give inmates the choice of waiting

weeks, if not months, for a Step II response before filing a Step III appeal.  A reasonable reading of this policy is that an inmate has 10 business days from receiving the response to file the appeal, but must file the appeal no later than at least 10 business days from the day the response was due if no response was forthcoming within that time.  If the prison returns a late response, the prisoner does not get a "new" 10-day period in which to file an appeal.  An inmate is not excused "from completing the grievance process through Step III, even where he or she has not received a response, because the Policy Directive explicitly makes further administrative proceedings available even in the absence of a timely response at Step I or Step II."  *Bennett v. Michigan Dep't of Corr.*, 2017 WL 3208591, at *7, n. 9 (E.D. Mich. July 24, 2017), *report and recommendation adopted* 2017 WL 4230645 (E.D. Mich. Sept. 25, 2017).

An example may help to illustrate the point.  Say the prison received a Step II grievance appeal January 1, 2020.  The prison's response, according to its policy, is due 15 business days after receipt of the grievance, or by January 22nd. (ECF No. 34-1, PageID.441, ¶ CC).  If the prison returns the response to the inmate between January 1st and January 22nd, the inmate has 10 business days from receipt to file an appeal at Step III.  Or, if on January 22nd, the inmate still has not received the response, the inmate has 10 business days from the 22nd to file an appeal.  In either case, the Step III appeal would be timely.  If, however, the

inmate gets the response on January 23rd or any later date, prison policy does not give the inmate another 10-business day deadline.  For example, say the inmate did not file a Step III appeal while waiting for the Step II response, and received the Step II response February 12th.  By this date, the Step III appeal deadline is long past; it was due February 5th, 10 business days from the date the response was due. The inmate then files a Step III appeal two days after getting the Step II response, on February 14th.  This appeal is untimely under the rule.  The absolute latest a Step III appeal can be filed and be timely is within 10 business of the day the response was due, or if the response came on that last date.  Anything later is in violation of the policy.

So, plaintiff's argument here that her appeal was timely because she filed it within 10 business days of receipt of the Step II response is unavailing.  The Step II response, according to her, did not get to her until December 28th.  But it was due December 12th at the latest according to the extension.  Under paragraph FF of the policy, her appeal was due within 10-business of the due date for the response, including any extensions.  Accordingly, her Step III appeal was due before January 2018, regardless of whether she got the Step II response after December 12th. Since plaintiff did not *properly* exhaust her administrative remedies on this grievance, grievance 3412 is not exhausted.

B.    Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

1.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).

In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

2.    First Amendment Retaliation

Plaintiff alleges First Amendment Retaliation in her complaint.  As defendants note, there is only one allegation in the complaint regarding Pope's retaliation claim.  It is as follows:

> On or about 6/6/2018 P.A. Rohr [sic] said I was approve [sic] for the Cat-Scan that was requested from oncology in April of 2018.  P.A. Rohr said Director Papendick was still denying me offsite and I believe it was retaliation for the complaint filed with the U.S. Justice Dept and the grievance on Dr. Lacey [sic] back on or about 5/2/2018.

(ECF No. 1, PageID.20, ¶ 92).

Defendants first argue that this allegation is against Dr. Papendick only, and any retaliation claim against another defendant should be dismissed.  (ECF No. 35, PageID.427).  Plaintiff urges the Court to take an "active interpretation" of her allegation and extend it to a claim of retaliation against Dr. Lacy as "supervisor/director," since he "would necessarily be involved in offsite treatment decisions and approvals."  (ECF No. 37, PageID.582).

22

Plaintiff's interpretation of her allegation is too expansive.  The single paragraph allegation is plainly that she believes Dr. Papendick was denying offsite care in retaliation for filing a complaint and a grievance against Dr. Lacy.  To read into the allegation a claim that Dr. Lacy, as a supervisor, was involved in denying offsite care in retaliation for the grievance would amount to adding a claim to the complaint that plaintiff did not herself include.  The retaliation claim is against Dr. Papendick only, and should be dismissed against all other defendants.

Defendants next argue that the allegation, against Dr. Papendick, does not state a claim for retaliation.

Although not expressly referred to in the Constitution, retaliation is actionable based on the premise that retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, Pope must establish the following: 1) she engaged in protected conduct, 2) an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) that a causal connection exists between the first two elements. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The undersigned agrees with defendants that plaintiff's retaliation claim should be dismissed for insufficient pleading on the third element.  Plaintiff has not

alleged facts to support her assertion that Dr. Papendick denied the offsite care *because of* the protected conduct.  She contends that she has satisfied this third element through temporal proximity.  (ECF No. 37, PageID.581) (citing *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010)).  She alleges that on or about May 2, 2018, she filed the complaint and the grievance.  On June 6th, she was informed that Dr. Papendick denied the offsite, roughly one month after the protected conduct.  Plaintiff draws the inference that the offsite was denied because of the complaints filed only one month earlier.

While temporal proximity alone may support a finding of a causal connection in some situations, "[s]ubstantial case law from th[e] [Sixth] [C]ircuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone," and evidence in addition to temporal proximity is usually required. *LaFountain v. Mikkelsen,* 478 Fed. Appx. 989, 993 (6th Cir. 2012) (quoting *Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 400 (6th Cir. 2010)); *see also, Coleman v. Bowerman,* 474 Fed. Appx. 435, 437 (6th Cir. 2012) (citations omitted) ("In theory, temporal proximity between the protected conduct and the adverse action, standing alone, may be significant enough to create an inference of retaliatory motive. However, when other evidence of retaliatory motive is lacking, we have been reluctant to hold that temporal proximity is sufficient to establish causation."); *Hill v. Lappin,* 630 F.3d 468, 476 (6th Cir.

2010) ("Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive.").

Here, plaintiff has pointed to no other evidence of retaliatory motive beyond temporal proximity except for her *belief* that Dr. Papendick denied the offsite because of her complaint and grievance. Plaintiff's "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin–Bey v. Rutter,* 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation and citations omitted).  Plaintiff's retaliation claim should be dismissed.

> 3.   Americans with Disabilities Act

Plaintiff alleges that she was subjected to discrimination under the Americans with Disabilities Act (ADA).  (ECF No. 1, PageID.5).  She did not attribute this claim to any particular defendants, so it appears she raises it against all defendants.  She also did not state under which title she brought her claim, although it is clear that it is not a Title I claim because Title I covers employment. The moving defendants here argue that the ADA claim should be dismissed against Corizon and Corizon employees because neither are a "public entity" as defined

under Title II the ADA.  (ECF No. 35, PageID.428).  Defendants did not bring argument on Title III of the ADA.

A claim under Title II cannot stand as against Corizon or its employees. Under the ADA, plaintiff must establish that: (1) she is a qualified person with a disability; (2) Corizon is subject to the ADA; and (3) she was denied the opportunity to participate in or benefit from Corizon's services, programs, or activities, or was otherwise discriminated against by Corizon, by reason of her disability.  *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).  The ADA applies to state prisoners, *McKinley v. Bowlen*, 2001 WL 493394, at *1 (6th Cir. May 1, 2001).  Corizon correctly asserts that it is not a public entity subject to suit under Title II of the ADA even though it contracts with a public entity such as the MDOC to provide a service.  *Larson v. Michigan Dep't of Corr.*, 2018 WL 2717493, at *3 (E.D. Mich. June 5, 2018) (Hood, J.) (citing *Matthews v. Pennsylvania Dep't of Corr.*, 613 Fed. Appx. 163, 169-70 (3d Cir. 2015)) (("[Corizon] is not a public entity subject to suit under the ADA even if it contracts with a public entity to provide a service.")); *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) ("A private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services" and thus, prison health service company was not subject to suit under ADA.).

The same is true for the individual Corizon employee defendants.  While it is recognized that the ADA applies to state prisoners, it is well-settled that there is no individual liability under the ADA, as individual defendants are not liable for damages for an alleged violation of the ADA.  *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not [ ] provide for suit against a public official  in his individual capacity"); *Martin v. Michigan Dept' of Corr.*, 2018 WL 4566619, at *6 (E.D. Mich. Sept. 24, 2018) (Dismissing ADA claim against Corizon and Corizon employee because neither are subject to suit under the ADA); *Kaufman v. Corizon Health, Inc*., 2013 WL 1289313, at *15 (E.D. Mich. Feb. 22, 2013) (granting summary judgment to defendants because there is no individual liability under the ADA).  Thus, plaintiff's ADA claims against the individuals under Title II fail as a matter of law.[5]

Defendants did not bring argument on whether Title III of the ADA applies to them, and did not respond to plaintiff's argument that Corizon was liable to her under Title III.  Title III prohibits discrimination on the basis of disability "in the full and equal enjoyment . . . of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of accommodation." 42 U.S.C.

---

[5] To the extent plaintiff raised an official capacity claim against the Corizon employee defendants, the claim would likewise fail because a suit against an employee in her official capacity under § 1983 is a suit alleging that an official policy or custom of the corporation (here, Corizon) caused an alleged deprivation of a federal right.  *Street v. Corr. Corp. of Am*., 102 F.3d 810, 817-18 (6th Cir. 1996); *Starcher v. Corr. Med. Sys., Inc*., 7 Fed. Appx. 459, 465 (6th Cir. 2001).  As discussed above, Corizon is not subject to suit under the ADA.

§ 12182(a). The phrase "public accommodation" is defined for purposes of Title III in terms of 12 extensive categories of facilities leased or operated by private entities, including health care providers, "if the operations of such entities affect commerce." It is not entirely clear whether Corizon would be considered a public entity under Title III. *Compare Stafford v. Wexford of Indiana, LLC*, 2017 WL 4517506 (S.D. Ind. Oct. 10, 2017) (holding that private company that offered medical care in Indiana prisons was subject to suit under Title III) *with Collazo v. Corrections Corp. of Am.*, 2011 WL 6012425 (N.D. Ohio Nov. 30, 2011) ("The ADA only regulates non-residential facilities[,]" and does not apply to a jail or prison facility).

Whether Title III can be applied to Corizon is of no moment here, because plaintiff simply failed to state a claim under Title III.[6] Plaintiff's complaint focuses on the alleged failure to promptly and adequately treat her medical issues and colon cancer. Plaintiff never alleges that she has a qualifying disability, or that, assuming colon cancer is the disability, she was denied participation in healthcare or treated differently from other prisoners because of her colon cancer diagnosis. "[T]he ADA does not create a federal cause of action for prisoners

---

[6] Though plaintiff's complaint has been screened in this case (ECF No. 7), "the court shall dismiss the case <u>at any time</u> if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted" where the plaintiff is proceeding *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B)(ii)) (emphasis added).

challenging the medical treatment provided for their underlying disabilities."
*Hubbard v. Taylor,* 452 F.Supp.2d 533, 544 (D. Del. 2006); *see also Vick v. Core Civic*, 329 F. Supp. 3d 426, 443-44) (M.D. Tenn. 2018) ("Plaintiff is claiming that he was not properly treated for his diabetes, not that he was mistreated because of his diabetes. This claim falls squarely under the Eighth Amendment of the United States Constitution and will be addressed as such.") (collecting cases).  Plaintiff's claims are about medical deliberate indifference, and should be treated as such. She has failed to state a claim under Title III of the ADA; the claim should be dismissed.[7]

### 4.    Fourteenth Amendment

Plaintiff alleges, without elaboration, that she was denied due process under the Fourteenth Amendment.  (ECF No. 1, PageID.4).  Defendants believe this Fourteenth Amendment claim is really the Eighth Amendment deliberate indifference claim.  There is only this one mention of the Fourteenth Amendment in the complaint.  They contend that the Fourteenth Amendment claim should be dismissed because claims of deliberate indifference are governed by the Eighth

---

[7] Further, any claim for monetary relief under Title III of the ADA is barred because only injunctive relief is available under Title III of the ADA. *See Southwell v. Summit View of Farragut, LLC*, 494 Fed.Appx. 508, 512 (6th Cir. 2012) ("Title III of the ADA provides only injunctive relief, not monetary damages to successful plaintiffs.").

Amendment alone.  (ECF No. 35, PageID.429).  Plaintiff did not argue against dismissal of the Fourteenth Amendment claim.  (*See* ECF No. 37).

Because plaintiff's deliberate indifference claim is covered specifically by the Eighth Amendment, it must be analyzed under the standard appropriate to that specific provision, rather than "the rubric of substantive due process." *Burgess*, 735 F.3d 462, 473 (6th Cir. 2013) (citing *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  There appears to be no stand-alone Fourteenth Amendment claim asserted in the complaint.  The Fourteenth Amendment claim should be dismissed.

### 5.   Eighth Amendment Deliberate Indifference

Defendants Corizon, Dr. Lacy, and P.A. Rohrs argue that plaintiff failed to state a claim against them for deliberate indifference to her serious medical needs. To the extent a claim for deliberate indifference regarding her colon cancer was properly exhausted (*see* recommendation, *infra*, that the applicable grievance 3412 was not properly exhausted), the undersigned suggests that plaintiff failed to state the claim except as against P.A. Rohrs, as discussed below.

### a.   Corizon Health – *Monell* Claim

Corizon argues that plaintiff failed to state a *Monell* claim because she failed to allege any Corizon policy, practice, procedure, or protocol.  (ECF No. 35, PageID.429-30).  According to plaintiff, her complaint contains allegations that

demonstrate Corizon's policy of denying necessary medical treatment in order save money and keep treatment "in house."  She asserts that where a plaintiff pleads that medical care was denied as part of a cost-saving practice, the plaintiff has stated a *Monell* claim.  (ECF No. 37, PageID.583-84).  In reply, Corizon maintains that plaintiff only generally pled that she was denied treatment to save money, but that she did not plead any facts related to a Corizon policy.  (ECF No. 39, PageID.596-97).

"A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury."  *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 690-91).  In *Monell*, the Supreme Court held that municipalities are "persons" subject to suit under § 1983.  436 U.S. at 700-01.  However, such a claim may only be brought when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id*. at 694.  "As a contracted provider of prison health services, Corizon acted in the capacity of a governmental actor," and is subject to *Monell* claims.  *Edwards v. Prasad*, 2016 WL 7115959, at *6 (E.D. Mich. Oct. 31, 2016), *report and recommendation adopted*, 2016 WL 7100492 (E.D. Mich. Dec. 6, 2016).

The Sixth Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and quotations omitted). Accordingly, to succeed on a *Monell* claim, a plaintiff first must allege that the municipality itself caused a constitutional tort. *Monell*, 436 U.S. 658 at 691. "A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. Second, a plaintiff must show that the alleged conduct qualifies as a policy. *Monell* municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. *Monell* liability may also attach where a plaintiff alleges "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-91. A plaintiff must claim that "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Third, a plaintiff must show

causation.  In other words, a plaintiff must connect the policy to the particular injury alleged.

Defendants are correct that plaintiff did not adequately plead a *Monell* claim against Corizon for denied or inadequate medical care to save money.  On review of the complaint, it is clear that plaintiff made no allegation against Corizon, let alone an allegation that Corizon has a policy or practice of denying care to save money.  She made that claim against defendant Papendick once, alleging that he denied off-site treatment because of cost.  (ECF No. 1, PageiD.17, ¶ 66).  She later attributed Papendick's denial of off-site care to retaliation for a complaint and grievance she filed.  (*Id.* at PageID.20, ¶ 92; PageID.22, ¶ 110).  She did not allege that Corizon, the entity, had a policy of denying care to cut costs.  Her only mention of a policy comes in her request for relief, in which she states: "Order remedial action to remedy defendants unlawful policies, practices, acts, and omissions to deter future violations."  (ECF No. 1, PageID.5).  This is not enough.

Plaintiff asserts that where the complaint alleges that medical treatment was denied to cut costs, generally, the plaintiff sufficiently stated a *Monell* claim.  But her argument, and the cases she relies upon, miss the mark.  In the cases she cites, those plaintiffs made allegations about the private prison health organization, like Corizon, denying care to save money.  *See e.g., Garrison v. Davis,* 2009 WL 1508293, at *3 (E.D. Mich. May 29, 2009) (denying motion to dismiss where

plaintiff alleged that CMS acted pursuant to an "unwritten policy and or pattern to deny necessary and effective medication to the Plaintiff in order to save money for profit" and that a nurse told plaintiff that certain medications are not prescribed for prisoners because they are not authorized because they are too expensive); *Reeves v. Corr. Med. Services,* 2009 WL 3876292, at *7 (E.D. Mich. Nov. 17, 2009) (plaintiff pled that defendant CMS had a cost-cutting policy, and that this policy resulted in the denial of his doctor's request for an MRI).

For example, in *Davis v. Caruso*, 2009 WL 877964 (E.D. Mich. Mar. 30, 2009), Davis, acting *pro se*, at least alleged that a health care professional told him he "did not believe CMS would approve any further testing," and Davis attributed the denials to the desire to cut costs. Here, Pope did not allege that Corizon was denying care to cut costs or that Corizon would deny treatment for any reason at all. And in *Davis*, the court, relying on *Petty v. County of Franklin, Ohio*, 478 F.3d 341 (6th Cir.2007), concluded that the allegations in the complaint, coupled with upcoming discovery to explore the existence of a policy or custom of denying care to cut costs were sufficient to move the case forward at the 12(b)(6) stage. *Id.* at *14-15. But *Petty* is no longer good law. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 389 (6th Cir. 2017). Now, plaintiffs asserting a *Monell* claim must sufficiently state their claim under *Twombly* and *Iqbal*, including sufficient facts

establishing the existence of the alleged policy or custom. *See Jones v. Oakland Cnty.*, 2018 WL 1310017, at *5 n. 2 (E.D. Mich. Feb. 16, 2018).

Plaintiff did not plead a *Monell* claim. Her cost-cutting allegation is against Dr. Papendick; she did not allege that Dr. Papendick was acting pursuant to policy or custom or that Corizon had a policy of denying certain care to save money. The Court should not read into the complaint an allegation that is not there. The deliberate indifference claim against Corizon Health, Inc., should be dismissed.

b.     Dr. Robert Lacy and P.A. Donna Rohrs

Defendants Dr. Lacy and P.A. Rohrs move for dismissal of plaintiff's medical deliberate indifference claim. In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). A viable Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Defendants contest only the subjective component.  The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.  Deliberate indifference "entails something more than mere negligence," *id*. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.*  To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk."  *Id.* at 837.  In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm."  *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839-40).

i.    Dr. Lacy

Dr. Lacy asserts that only one allegation in the complaint is directed at him and the Eighth Amendment.  He argues that the allegation is conclusory and does not establish that he was subjectively aware of any serious medical need and consciously disregarded it.  The allegation reads in full:

> On or about 5/2/2018 Dr. Lacey [sic] came to see me and lied to me about the genetic testing being done to the actual tumor remove [sic] on 11/24/2017.  He stated he had paperwork in his computer that said I did in fact have

36

> the LYNCH [sic] and that I need no more testing done.  I
> told him to lie to someone who is seriously ill about
> having additional diagnosis [sic] without solid evidence
> is inhumane.

(ECF No. 1, PageID.19, ¶ 86).

Plaintiff's argument is based on a broader reading of her complaint and one of her grievances.  As to the allegation quoted above, she insists that this is an allegation about Dr. Lacy's interference, through his lies, with testing prescribed by an oncologist.  She also points to an allegation made in a grievance—but not in her complaint—that Dr. Papendick blocked all her testing and then conspired to get her to drop the request for testing on the tumor when he sent Dr. Lacy to see her in May 2018.  And finally, according to plaintiff, there is an allegation on PageID.20 of her complaint that is also about Dr. Lacy.  However, the only allegation on that page that mentions Dr. Lacy is the allegation that Dr. Papendick denied off-site treatment because, as she believes, he was retaliating against her for a complaint she filed with the U.S. Justice Department and a grievance she filed against Dr. Lacy.  (ECF No. 1, PageID.20, ¶ 92).  Using an "active interpretation," plaintiff argues that it can be inferred that her allegations cover both Drs. Papendick and Lacy, that they were both involved in the denial and cancelation of off-site visits.  (ECF No. 37, PageID.584-85).  Dr. Lacy was a "supervisor/director," so she says it can be inferred that he would necessarily be involved in off-site treatment decisions and approvals.

As an initial matter, the undersigned will not consider the allegation plaintiff made in a grievance about Dr. Papendick conspiring with Dr. lacy to block all medical testing.  The standard under *Twombly* and *Iqbal* is that the complaint must state a claim to relief that is plausible on its face, not that a claim made in a document attached to an opponent's brief state a plausible claim.  Since this grievance was not attached to the complaint and is not central to the claims stated in the complaint—indeed, it is entirely new claim altogether—the undersigned will not consider it for purposes of determining whether plaintiff has stated a sufficient claim to relief against Dr. Lacy.

The only allegation in the complaint that references Dr. Lacy and that could be construed as a deliberate indifference claim is that quoted above, that Dr. Lacy lied to plaintiff that genetic testing was done on the tumor and confirmed she had Lynch syndrome "without solid evidence."  It goes too far to read the complaint to include an allegation against Dr. Lacy for denying off-site medical care.  Dr. Lacy may well have been a director or supervisor and may have been involved in the decision to deny off-site care, but plaintiff did not include such an allegation against Dr. Lacy.

The complaint allegation directed at Dr. Lacy does not demonstrate subjective deliberate indifference to a serious risk of harm.  It should be noted that later in her complaint, plaintiff says she was diagnosed with Lynch syndrome, but

it is not clear when this happened.  (ECF No. 1, PageID.22, ¶ 115).  Accepting as true that Dr. Lacy lied about the Lynch diagnosis, this at most amounts to a claim of negligence or medical malpractice against Lacy, neither of which rises to the level of an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Knox v. Davis*, 2012 WL 6212636, at *3 (E.D.N.C. Dec. 13, 2012), *aff'd*, 516 F. App'x 287 (4th Cir. 2013) ("Plaintiff's protests that defendants 'lied' or that the tests were 'wrong' are, without more, simply insufficient to state a claim that defendants were deliberately indifferent."); *Miller v. Ramineni*, 2016 WL 1253684, at *7 (N.D.N.Y. Feb. 29, 2016), *report and recommendation adopted*, 2016 WL 1261125 (N.D.N.Y. Mar. 30, 2016) ("However, even if R.N. Visallr's diagnosis were incorrect, it would constitute, at most, negligence or malpractice, which, without culpable recklessness – acts or omissions that evidence conscious disregard for a substantial risk of harm – does not establish an Eighth Amendment violation.").

Put another way, it is not clear how Dr. Lacy's lie about testing that confirmed a diagnosis that plaintiff actually has amounts to a conscious disregard of a risk of harm to plaintiff and a constitutional violation.  The claim should be dismissed.

ii.     P.A. Rohrs

Defendants list all the allegations in the complaint that involve or name

Rohrs.  Only one of these is in dispute.  Plaintiff alleges that on or about January

15, 2018, Dr. Papendick denied her off-site visit with an oncologist knowing that

her "cancer CEA" levels had gone up.  Also on that date, P.A. Rohrs told plaintiff

that she was following Dr. Papendick's order to not send a request to send plaintiff

out and to try to keep things in-house because of cost.  (ECF No. 1, PageID.17, ¶

66).

According to defendants, Rohrs' only involvement was limited to explaining

management's decision on plaintiff's care; she was not granted any decision-

making authority in deciding plaintiff's treatment.  For this reason, they assert that

plaintiff's deliberate indifference claim should be dismissed against Rohrs.  (ECF

No. 39, PageID.597).  Plaintiff argues that merely following orders does not save

Rohrs' complicity in the violation of plaintiff's constitutional rights.  She argues

that if a medical provider knows a prisoner needs treatment, but he participates in

the lack of treatment, he cannot avoid liability by pointing away blame.  (ECF No.

37, PageID.586).

Construing plaintiff's complaint and argument liberally, she alleges it was a

violation of the Eighth Amendment to attempt to keep her cancer treatment within

the prison, rather than sending her outside the prison for medical care.  This

violated her right to adequate medical care because the decision to keep her care in-house came while her cancer levels were increasing, and she would not get better without outside help. So, Rohrs' decision in January 2018 not to go around Dr. Papendick's order not to send her out amounts to deliberate indifference to plaintiff's needs because plaintiff believes she would have received better cancer treatment outside the prison.

While a nurse or physician's assistant may defer to the instructions given by physicians, such deference "may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) (quoting *Berry v. Peterman,* 604 F.3d 435, 443 (7th Cir. 2010)). It is equally true under Eighth Amendment precedents that a difference of opinion on the course of medical treatment is insufficient to establish a violation of the amendment.

Plaintiff has alleged facts from which to infer a serious risk of harm—she was diagnosed with colon cancer and her cancer levels were rising. She also alleged facts that demonstrate that Rohrs drew that inference. Rohrs certainly knew about plaintiff's cancer and, in April 2018 (roughly four months later), told plaintiff she went around Dr. Papendick to request an off-site oncology visit because Dr. Papendick would have denied the request. (ECF No. 1, PageID.19, ¶ 84). This suggests that Rohrs drew the inference that plaintiff would suffer harm if

41

she was not sent to these off-site visits, and that Dr. Papendick would delay her care.  It also suggests that Rohrs had the ability to send plaintiff to an off-site visit, even where Dr. Papendick might have denied the visit.  Since Rohrs, according to the complaint, went around Dr. Papendick in April but not in January 2018, it appears that plaintiff has sufficiently pled facts that demonstrate that Rohrs was deliberately disregarding a risk of harm in January when she did not take some other action to get approval for the off-site.  Evidence gathered through discovery may shed more light on Rohrs' authority and actions, but at this stage, the undersigned concludes that plaintiff has said enough for this claim to move forward.

C.   Conclusion

In conclusion, the undersigned recommends the following disposition of defendants' motion to dismiss:

- That any claims related to the allegations made in Grievances 2557 and 3412 be dismissed, as those grievances were not properly exhausted;

- That plaintiff's First Amendment retaliation claim be construed as against Dr. Papendick only, but that the claim be dismissed for failure to state a claim;

- That plaintiff's ADA claim be dismissed;

- That plaintiff's Fourteenth Amendment claim be dismissed;

- Alternatively, that plaintiff's Eighth Amendment claim against Corizon Health be dismissed for failure to state a *Monell* claim;

- Alternatively, that plaintiff's Eighth Amendment claim against Dr. Lacy be dismissed for failure to state a claim;

- And alternatively that plaintiff's Eighth Amendment claim against P.A. Rohrs not be dismissed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants Corizon Health, Inc., Robert Lacy, Keith Papendick, Claire Pei, Mohammed Azimi, Shanthi Gopal, and Donna Rohrs' motion to dismiss (ECF No. 35) be **GRANTED IN PART, DENIED IN PART**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  May 6, 2020                          s/Michael J. Hluchaniuk
                                            Michael J. Hluchaniuk
                                            United States Magistrate Judge


## CERTIFICATE OF SERVICE

I certify that on May 6, 2020, I electronically field the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.


                                            s/ Durene Worth
                                            Case Manager
                                            (810) 341-7881
                                            durene_worth@mied.uscourts.gov