UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AISHA POPE,

               Plaintiff,

v.

CORIZON HEALTH, KEITH
PAPENDICK, ROBERT LACY, CLAIRE
PEI, SHANTI GOPAL, MOHAMMED
AZIMI, DONNA ROHR, R.N. FIORINI,
R.N. BRANCH, R.N. TINSLEY and
MS. ROBINSON,

               Defendants.

_____/

Case Number 19-10870
Honorable David M. Lawson
Magistrate Judge David R. Grand

**OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION,
SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS
AND GRANTING IN PART AND DENYING IN PART MDOC DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND CORIZON DEFENDANTS'
MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Aisha Kai Pope filed a civil rights complaint under 42 U.S.C. § 1983 on her own

behalf (without a lawyer's help) alleging that, while she was a state prisoner at the Women's Huron

Valley Correctional Facility (WHV) in Ypsilanti, Michigan, the defendants denied her due process

of law and subjected her to cruel and unusual punishment due to their delay or denial of proper

medical care. The case was referred to the assigned magistrate judge for all pretrial proceedings.

It initially was screened for merit as required by 28 U.S.C. § 1915, and several claims and parties

were dismissed. In her surviving claims, the plaintiff alleges that the defendants were deliberately

indifferent to her serious medical needs in violation of the Eighth Amendment. She also alleges

that certain defendants retaliated against her unlawfully after she attempted to pursue grievances

against them, and that she was subjected to illegal discrimination contrary to the Fourteenth

Amendment and the Americans With Disabilities Act.

Defendants Corizon Health and its employees Keith Papendick, Robert Lacy, Claire Pei, Shanti Gopal, Mohammed Azimi, and Donna Rohr (doctors and other medical staff) filed a motion to dismiss in which they argued that (1) certain claims were procedurally barred because the plaintiff failed fully to pursue available administrative avenues for relief; (2) the claims under the First and Fourteenth Amendment and the ADA were insufficiently pleaded; and (3) the plaintiff failed to propound facts suggesting that any policy, custom, or practice pursued by Corizon caused any harm to her rights.  The remaining defendants, who were identified only by their surnames as R.N. Fiorini, R.N. Branch, R.N. Tinsley, and Ms. Robinson (staff nurses employed by Michigan's Department of Corrections (MDOC)) separately filed a motion for partial summary judgment asserting exhaustion defenses against certain other claims.

On May 6, 2020, the magistrate judge issued two reports recommending that the Court grant the MDOC defendants' motion and grant in part the Corizon defendants' motion, specifically recommending that the Court: (1) dismiss as unexhausted the claims embodied in two of the four grievances that the plaintiff initiated against the prison nurses, (2) dismiss the claims against Nurse Robinson based on the plaintiff's concession that they were not exhausted, (3) dismiss all of the claims under the First and Fourteenth Amendments and the ADA for failure to allege facts plausibly stating any viable claim for relief, (4) dismiss the claims stated in two out of five disputed grievances against the Corizon defendants for lack of exhaustion, and (5) dismiss the institutional claims against Corizon under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and the claims against Dr. Lacy as insufficiently pleaded.  The magistrate judge noted that the parties had agreed that two claims against Nurse Fiorini of the MDOC, two against Dr. Pei (Corizon) and one against Dr. Papendick (Corizon) fully were exhausted.  The Eighth Amendment claims based on those five grievances are not presently at issue.

- 2 -

The plaintiff filed timely objections to both recommendations.  She did not object to the recommendations for dismissal of all her claims under the ADA and First and Fourteenth Amendments.  However, she argues that the recommendations for dismissal of several Eighth Amendment claims for want of exhaustion were improper because the magistrate judge overlooked plaintiff-favorable aspects of the record, and fact questions remain about whether the grievances in dispute were timely or fully pursued.  The plaintiff also contends that a generous view of her pleadings reveals adequately framed claims against Dr. Lacy and Corizon.  Corizon filed a rebuttal to the plaintiff's objections.  The MDOC defendants have offered nothing further.  The matter now is before the Court for fresh review.

## I.

As the Court noted in its screening opinion, the case focuses on events that occurred while Pope was incarcerated at WHV.  She alleges that from approximately 2016 to 2018, she was severely sick, experienced excessive pain, and began losing blood.  Although she was given iron supplements and over-the-counter medication, the medical staff allegedly delayed testing to find the source of her blood loss.  Pope further alleges that the defendants ignored her symptoms and refused to send her out of the correctional facility to get medical help.  She continued to experience rectal bleeding and severe pain and finally was diagnosed with invasive colon cancer.  Pope contends that the delays and denial of proper medical care amounted to cruel and unusual punishment under the Eighth Amendment to the Constitution.  Further particulars of the alleged mistreatment are immaterial at this stage of the case, since the issues presently before the Court principally concern the adequacy of the steps that Pope took (or did not take) when complaining to prison authorities about her medical care.

II.

The filing of timely objections to a report and recommendation requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

As an initial matter, although the Corizon defendants styled their motion as a pleading challenge via Federal Rule of Civil Procedure 12(b)(6), the magistrate judge recharacterized those portions of the motion asserting exhaustion defenses as a motion for summary judgment under Rule 56, noting that the trend in circuit law has been to regard Rule 12 as an inappropriate procedural avenue for resolution of exhaustion issues. *E.g.*, *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 788 (E.D. Mich. 2016). The parties have not challenged that procedural reframing, and none have asserted that they were denied a reasonable opportunity to present pertinent evidence on the

exhaustion question.  *See* Fed. R. Civ. P. 12(d).  The Court therefore will consider the exhaustion

questions under the Rule 56 standard, as did the magistrate judge.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  As the Sixth Circuit has explained:

> Both claimants and parties defending against a claim may move for summary
> judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such
> a motion presumes the absence of a genuine issue of material fact for trial. The
> court must view the evidence and draw all reasonable inferences in favor of the
> non-moving party, and determine "whether the evidence presents a sufficient
> disagreement to require submission to a jury or whether it is so one-sided that one
> party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
> 242, 251-52 (1986).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009).  "The party bringing the summary

judgment motion has the initial burden of informing the district court of the basis for its motion

and identifying portions of the record that demonstrate the absence of a genuine dispute over

material facts."   576 F.3d at 558 (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover*

*Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  "Once that occurs, the party opposing the

motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of

a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the

motion."  *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

The parties agree, and it is well settled that "[t]he Prison Litigation Reform Act requires

prisoners to exhaust all available administrative remedies before filing civil rights suits in federal

court."  *Davis v. Michigan Dep't of Corr.*, No. 19-2264, 2020 WL 6364583, at *2 (6th Cir. Sept.

1, 2020) (order) (citing 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007)).  "'Proper

exhaustion demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some orderly structure

on the course of its proceedings.'" *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). "In *Woodford*, the Supreme Court held that a prisoner's § 1983 action must be dismissed for failure to exhaust administrative remedies where the underlying grievance was denied as untimely even though the claim would not have been barred by the applicable statute of limitations. *Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance." *Ibid.* Nevertheless, "[a]lthough an inmate must exhaust available administrative remedies, he need not exhaust unavailable remedies." *Lewis v. Decker*, No. 19-2162, 2020 WL 5984757, at *2 (6th Cir. July 14, 2020) (order) (citing *Does 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019)). "[A]n administrative remedy is unavailable when: (1) it 'operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates,' (2) the grievance process is so incomprehensible that 'no ordinary prisoner can discern or navigate it,' or (3) 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Ibid.* (quoting *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1859-60 (2016)). "A prisoner's failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove." *Davis*, 2020 WL 6364583, at *2 (citing *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)). Summary judgment on an exhaustion defense "is appropriate only if the defendants establish the absence of a genuine dispute as to any material fact regarding non-exhaustion." *Lewis*, 2020 WL 5984757, at *1 (quotations omitted).

The parties do not dispute that the applicable provisions of MDOC's grievance policy establish certain deadlines for proceeding with grievance appeals. "The Michigan Department of Corrections (MDOC) provides a three-step grievance process that prisoners must follow to exhaust

their administrative remedies." *Dykes v. Fuller*, No. 19-2243, 2020 WL 6257023, at *1 (6th Cir. July 10, 2020) (order). "Under Policy Directive 03.02.130, prison officials may reject a grievance if it 'is filed in an untimely manner,' unless 'there is a valid reason for the delay,' such as a transfer between prison facilities." *Johnson v. Wilkinson*, No. 19-1916, 2020 WL 4742510, at *2 (6th Cir. June 2, 2020) (order) (quoting MDOC Policy Directive 03.02.130 ¶ G(3)).

## A. MDOC Defendants

The magistrate judge noted at the outset that the complaint embraces Eighth Amendment claims that first were asserted by the plaintiff in eight separate grievances. Four of those implicated only the conduct of the Corizon defendants, and those were not discussed by MDOC's nurses in their motion. The parties agree that the plaintiff administratively exhausted two grievances stating complaints against R.N. Fiorini alleging that Fiorini wrongfully charged her for a visit to health care (grievance WHV-17-06-2521-1G), and that Fiorini interfered with another nurse's assessment and instructed the nurse not to summon the on-call doctor when the plaintiff was coughing and spitting up blood (WHV-18-06-1921-12E). The magistrate judge further noted the plaintiff's concession that none of the complaints against defendant Ms. Robinson had been exhausted, and her corresponding consent to the dismissal of the claims against Robinson without prejudice. That leaves only two grievances in dispute, which were identified as WHV-17-05-2328-28E ("grievance 2328") and WHV-17-08-3412-28E ("grievance 3412").

### 1. Grievance 2328

In grievance 2328, Pope complained that in May 2017 she had blood in her stool. A corrections officer called nurse Branch on plaintiff's behalf, but Branch said that the plaintiff would need to send a kite, and that she was occupied with a "chest pain inmate" at that time. Pope was "floored mentally" by Branch's response. Pope filed the grievance on May 19, 2017, and the

MDOC received the Step I grievance on May 25, 2017.  The grievance was denied and returned to the plaintiff on June 19, 2017.  The grievance coordinator received plaintiff's Step II appeal on July 21, 2017, which was denied on August 3, 2017.  According to documents in the grievance file, the response was returned to the plaintiff on August 14, 2017.  The plaintiff submitted her Step III appeal on September 18, 2017, but it was denied as untimely on the basis that any Step III appeal was due at the latest by August 29, 2017, not in September.

The defendants argued that the issues raised in this grievance were not exhausted due to the untimely Step III appeal.  The plaintiff opposed on the ground that the MDOC's response to the Step II grievance was itself untimely, since it was returned to the plaintiff beyond the operative 15-day deadline for processing a Step II appeal.  The magistrate judge agreed with the defendants, finding that the applicable directives of the MDOC Grievance Policy explicitly require a prisoner to continue the appeal process through Step III regardless of whether a timely response is received from a Step II appeal.  The magistrate judge found that the applicable policy directive (PD 03.02.130) required an inmate to submit a Step III appeal within 10 business days after either (1) receipt of an unsatisfactory response, or (2) expiration of the 15-day deadline for prison action on a Step II appeal that had met with no response.  The magistrate judge found that even taking the plaintiff's evidence at face value and assuming that the appeal clock began to run on August 17, 2017 (the date when she said she received the untimely Step II denial), she still was required to submit a Step III appeal no more than 10 business days after that; her Step III appeal was submitted on September 18, 2017, beyond even the most generous hypothetical cutoff.

In her objections, the plaintiff argues that the magistrate judge erred by determining that this grievance should be deemed unexhausted for failure to comply with the grievance policy directives, because requiring a prisoner to proceed with a Step III appeal despite receiving no

response from prison officials, or else forfeit any right to later judicial review, does not serve any legitimate purpose of the grievance process, which is intended to afford prison officials timely opportunities to become aware of and correct problems reported by inmates.  She further argued that the grievance process was "not available" to her, because she was required to submit appeals on forms that had to be obtained from prison officials.  Finally, she asserts that the defendants should be deemed to have waived any strict timeliness requirements because they did not reject the Step II appeal as untimely, even though it also was submitted beyond the operative 10-day deadline after receipt of the Step I denial.

The parties do not dispute that the applicable provisions of the MDOC's grievance policy establish certain deadlines for proceeding with grievance appeals, and it is undisputed that the plaintiff's Step III appeal was submitted beyond the latest date when the 10-day clock purportedly could have been triggered.  It also is undisputed that prison officials asserted the procedural irregularity and rejected the Step III appeal as untimely.  The Sixth Circuit repeatedly has upheld the dismissal of prisoner claims as unexhausted where the inmate failed to submit a timely appeal within the deadlines specified by PD 03.02.130 and the appeal was rejected as untimely.  *Johnson*, 2020 WL 4742510, at *2 ("Even assuming that the five-day period began to run in February 2018, when Johnson submitted his most recent kite that is dated, his Step 1 grievance was still filed more than five days later.  Prison officials did, in fact, reject Johnson's grievance as untimely.  Because Johnson's grievance was untimely, the district court correctly found that he failed to exhaust his administrative remedies properly." (citing MDOC Policy Directive 03.02.130 ¶ G(3)); *Lewis*, 2020 WL 5984757, at *1 ("Lewis failed to properly exhaust his claim that Dr. Jonathan Decker and Physician's Assistant Barbara Hoover were deliberately indifferent to his serious medical needs because the grievances that he filed against these defendants were denied as untimely.") (citing

MDOC PD 03.02.130); *Scott*, 577 F.3d at 647 ("Scott's grievance against Dr. Faghihnia was rejected as untimely during the administrative process.  Therefore, under *Woodford*, he failed to exhaust his administrative remedies.").  The plaintiff contends that generalized policy concerns about overly strict enforcement of grievance policies raise doubts about the soundness of the MDOC's procedures, but she has not cited any decisions holding that the timing provisions of PD 03.02.130 as applied here are in any way legally unsound.

The plaintiff also contends that her untimely appeal should be excused because she submitted her Step II appeal late and it was addressed on the merits, in contrast with the Step III appeal that was rejected as untimely.  The plaintiff correctly notes that, "'[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will [the federal courts].'"  *Does 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019) (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010)).  However, "'prison officials waive any procedural irregularities in a grievance'" only where they overlook those deficiencies and "'nonetheless address the grievance on the merits.'"  *Ibid.* (quoting *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017)).  If the appeal process as officially styled had terminated after the Step II appeal, then the plaintiff's argument might carry some persuasive weight, since the Step II response addressed the merits and not the timing of that intermediate appeal.  But the defendants did not waive the assertion of their exhaustion defense against the late Step III appeal, because that procedural defect *was* asserted as the basis for the rejection of the final appeal, and no decision on the merits of the Step III appeal ever was issued.

The plaintiff also argues in a general fashion that the grievance process was "unavailable" to her because she was required to obtain forms for filing appeals from prison officials.  She asserts that "fact questions remain" about the availability of the grievance process based on handwritten

notations on some of the forms (purportedly made by her) suggesting that she was "waiting" for grievance forms.  But the document cited bears only a vague handwritten note that reads as follows: "9-24-2017 — Asked again for Step II."  Step I Grievance Resp. dated Sept. 11, 2017, ECF No. 34-3, PageID.330.  Even if the Court accepts at face value the plaintiff's assertion that she made the note, the vague notation indicating that the plaintiff had "asked again" for something relating to a "Step II" appeal, purportedly *six days after* her Step III appeal on the 2328 grievance was submitted, does not in any way present a question of fact about whether prison officials obstructed her submission of the Step III appeal by withholding forms required for commencement of that step in the appeal procedure.

The plaintiff also correctly points out that it is well settled that prisoners only need to exhaust "available" procedures, not ones that are "unavailable."  But an administrative procedure is "unavailable" only "when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates," or where it is "so opaque that it becomes, practically speaking, incapable of use," or where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross*, 136 S. Ct. at 1859-60.  The plaintiff has made no showing satisfying any of those criteria here.  She does not allege that the process inevitably terminates without producing any meaningful relief; and she does not argue that its strictures are incomprehensible.  She also has not produced any evidence that prison officials obstructed the timely submission of any of her appeals by "machinations" or "intimidation."  She therefore has failed to establish that any genuine issue of material fact remains for trial on whether the process was "available" to her.  In fact, the record of the plaintiff's

successful (although, in some instances, untimely) submissions of numerous appeals of her grievances suggests otherwise.

The magistrate judge correctly assessed the record and determined that it demonstrates beyond debate that the 2328 grievance was unexhausted due to the rejection of the Step III appeal as untimely. The plaintiff's arguments to the contrary are unconvincing.

## 2. Grievance 3412

In grievance 3412, the plaintiff complained that Nurses Branch, Tinsley, and Fiorini were indifferent to her medical needs when they did not inform her about test results or abnormal readings of her vitals and ignored signs of medical issues, which prevented early detection and treatment of her colon cancer. The defendants similarly argued that those claims also were unexhausted due to an untimely Step III appeal.

The record indicates that the grievance was denied at Step I, and a Step II appeal was received on November 1, 2017. The defendants assert that the response denying the Step II appeal was returned to the plaintiff on November 30, 2017. However, the grievance file also contains a notification sent to the plaintiff of prison officials' election to extend the time for responding to the Step II appeal through December 12, 2017, to allow time for investigation of the facts underlying the complaint. Letter re: Grievance Delay dated Nov. 7, 2017, ECF No. 34-3, PageID.331. The plaintiff asserts, with backup from notations that she made on the Step II response form, and statements included in her Step III appeal submission, that she did not actually receive the rejection of the Step II appeal until it was given to her during mail call on December 28, 2017. In particular, the grievance file contains a letter from the plaintiff to the grievance coordinator dated January 8, 2018, in which she wrote that her Step III appeal of the grievance was timely because it was submitted within 10 days after December 28, 2017, when she received the

Step II response.  Letter dated Jan. 8, 2018, ECF No. 34-3, PageID.332.  However, the notice of rejection of the Step III appeal stated that it was untimely because it was not received by December 21, 2017.  Step III Resp. dated Jan. 29, 2018, ECF No. 34-3, PageID.326.  As the magistrate judge observed, there are no calculations apparent from the record, or professed by the defendants, to explain how the December 21, 2017 date was determined, or from what operative deadline it was reckoned to be 10 business days after.

The magistrate judge concluded that, notwithstanding the timeline discussed above, the appeal still was untimely because the applicable policy directive established an absolute outer limit of 10 business days after the deadline for responding to a Step II appeal as the latest possible date when a prisoner timely could commence a Step III appeal, where no timely Step II response was forthcoming.  The magistrate judge interpreted the policy to prohibit the subsequent submission of a Step III appeal even where a Step II response actually was received after the established deadline. The magistrate judge based that conclusion on the operative language of MDOC's grievance policy, which states as follows:

> A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.

MDOC Policy Directive 03.02.130, ECF No. 34-2, PageID.239.  Thus, by the magistrate judge's reading, the latest date for commencement of the Step III appeal was December 27, 2017 (10 business days after the Step II extended deadline), not, as the plaintiff argues, 10 days after the Step II response actually was received on December 28, 2017.

The Court finds the magistrate judge's reading of the operative policy language to be overly narrow and contrary to how a prisoner in the plaintiff's situation reasonably would understand her

- 13 -

rights.  The policy language plainly states, in the disjunctive, that an appeal can be submitted *either* 10 business days after a response is due, *or* within 10 business days "after receiving the Step II response."  Excluding Christmas Day, the outer limit assessed by the magistrate works out to December 27, 2017, which is 10 business days after the extended deadline of December 12, 2017 (and one day before the plaintiff says that she actually received the Step II denial).  However, excluding New Years Day 2018, the alternative deadline of 10 business days after the response was delivered works out to January 12, 2018, which, coincidentally, is the same the day that the defendants say the Step III appeal was received.  Conspicuously absent from the policy statement is any expressly limiting phraseology such as "the soonest of" or "whichever is earlier," which leaves both alternative measures of the deadline on equal footing.

The magistrate judge credited the record evidence from the plaintiff's grievance file where she wrote to the grievance coordinator that she had received the Step II response on December 28, 2017.  The Court sees no good reason to discredit the evidentiary value of that representation from the administrative record.  By a reasonable reading of the policy, 10 business days after the response was received was the outer limit of when the plaintiff reasonably could have understood her Step III appeal to be due.  That is particularly so where, as here, the defendants' deadline calculations are suspect in light of record evidence indicating that they had elected to extend the response deadline through December 12, 2017, but they purported to calculate a deadline for the Step III appeal to be submitted that was only seven business day later.  Moreover, the defendants have presented evidence that the Step II response was conveyed to the plaintiff on November 30, 2017, which is 15 business days before December 21, 2017.  The defendants' math does not add up no matter how the timeline is reckoned, and it therefore offers a decidedly infirm basis for judgment as a matter of law in their favor.

The plaintiff has submitted evidence suggesting that she did not receive the Step II response until well after the extended December 12, 2017 deadline.  The Step III appeal admittedly was received within 10 business days after the date when the belated response was received, based on the evidence in the record as construed most favorably in support of the plaintiff's case.  The defendants never addressed that timely appeal on the merits, but instead erroneously denied it on procedural grounds.  "It is well established that 'administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.'"  *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004)). Here, the administrative process on grievance 3412 was exhausted when the defendants failed to convey any substantive response to the timely Step III appeal.

"When the defendants in a prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455-456 (6th Cir. 2012)).  A reasonable jury could so find on this record, as to the claims comprised by grievance 3412.  Judgment as a matter of law on those claims is not warranted.

In sum, the plaintiff's objection to dismissal of the claims comprised in the 2328 grievance will be **OVERRULED**, but the objection to the dismissal of the claims raised in the 3412 grievance will be **SUSTAINED**.

### B. Corizon Defendants

The magistrate judge considered several disputed grievances concerning the plaintiff's treatment by Corizon medical staff.  First, he rejected out of hand the defendants' position that the "resolved" grievances WHV-18-03-0761-12F and WHV-18-05-1524-12D were not fully

exhausted; no party has objected to that determination.  Next, the magistrate judge also rejected the defendants' argument that grievance WHV-18-11-3595-28E was unexhausted because, despite being pursued through all available appeal steps, it embraced several disparate and "unrelated" issues; again, no party has challenged that finding.  The magistrate judge next considered grievances WHV-17-06-2557-28E and WHV-17-08-3412-28E and concluded that both were unexhausted because the Step III appeals were denied as untimely.  For the same reasons discussed above, the 3412 grievance properly was exhausted, and the plaintiff's objection to dismissal of those claims for want of exhaustion will be **SUSTAINED**.  That leaves the 2557 grievance in dispute, which further is discussed below.

### 1. Grievance 2557

In this grievance, the plaintiff complained that she had been trying for over a year to get Corizon's physician Dr. Claire Pei to consider more effective treatment for symptoms of her iron deficiency anemia, which included bruising, bleeding, and skin color changes.  The grievance was denied at Step I, and a Step II appeal also was denied.  The grievance file indicated that the Step II response was conveyed to the plaintiff on August 14, 2017.  The plaintiff submitted a Step III appeal, which was received on September 18, 2017.  However, it was denied as untimely, based on a calculated due date of August 29, 2017, well before September 18th.  Step III Grievance Response dated Nov. 9, 2017, ECF No. 35-2, PageID.536.  The magistrate judge found that even the most generous reading of the record could not sustain the plaintiff's assertion (which was not supported by any sworn testimony) that vague handwritten notations on certain other papers suggested that she actually received the Step II response "sometime on or after September 13, 2017," less than 10 days before her Step III appeal was commenced.

In her objections, the plaintiff highlights those same handwritten notations on a Step II response form, which read as follows: "Need Step III," "8/17/18," and "Still waiting on Step III as of 9/13/2017." Those notations are affixed at various positions in the margins of the page. No connection is apparent among them; nor is there any explanation for why one appears to note a date in 2018, more than a year after the Step III appeal was submitted. Moreover, as the defendants point out, and the magistrate judge observed, no sworn attestation has been submitted by the plaintiff to authenticate any of the notations as her own, or to explain their significance. For the same reasons discussed above in relation to grievance 2328, the vague handwritten notes are of insufficient evidentiary value to create any triable question of fact about when the Step II response was received. Reckoning from any date in mid-August, the Step III appeal was commenced far out of time when it was initiated on September 18, 2017.

The plaintiff has failed to raise a jury-triable question regarding exhaustion of the 2557 grievance, and her objection to the dismissal of claims comprised in that administrative complaint will be **OVERRULED**.

### 2. Motion to Dismiss

The remaining portions of the Corizon defendants' motion were addressed by the magistrate judge as pleading sufficiency challenges via Rule 12(b)(6) and will be so regarded here. As noted above, the plaintiff has not objected to the recommendations for dismissal of her claims alleging First Amendment retaliation, Fourteenth Amendment due process violations, and injuries to her rights under the Americans With Disabilities Act. Corizon Health also attacked the plaintiff's putative claim against the institutional defendant, and Dr. Preston Lacy challenged the Eighth Amendment claim against him individually. The magistrate judge concluded that each of those claims also were insufficiently pleaded. The Corizon defendants also sought dismissal of

the deliberate indifference claim against P.A. Donna Rohrs, but the magistrate judge found that claim to be plausibly supported by the facts alleged, and no party has objected to that determination.

The purpose of a motion under Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiff, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Unsupported conclusions will not suffice. Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). But the Court also may consider the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579,

586 (6th Cir. 2010).  However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings.  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

The plaintiff alleges that the handling of her cancer diagnosis by Corizon's medical staff violated her right to receive adequate medical care, which is guaranteed by the Eighth Amendment and made enforceable against state officials (and their private sector proxies) via 42 U.S.C. § 1983.  "Section 1983 of Title 42 of the United States Code imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights."  *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004)).  "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law."  *Ibid.* (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).  The plaintiff must establish the liability of each individual defendant by that person's own conduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### i. Claim Against Corizon Health

Corizon Health moved for dismissal of all claims against it for want of sufficiently pleaded facts suggesting that it could be subjected to direct liability.  It is well settled that, as a corporate entity (even one engaged in official business and standing in the shoes of a municipal entity such as the MDOC), Corizon cannot be held liable under section 1983 solely for the acts of its agents; it is accountable under that statute only for its own conduct.  *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 691 (1978) (holding that "a municipality cannot be held liable [under section 1983] solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").  The plaintiff, therefore, must point to an official policy, custom, or practice of the civilian contractor as the source of a constitutional violation. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).  And she must allege facts that show a causal connection between the policy and the injury.  *Cty. Commissioners v. Brown*, 520 U.S. 397, 404 (1997); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012).

The magistrate judge reviewed the entire complaint and found no trace within of any substantive, specific allegations against Corizon itself that could sustain any *Monell* claim.  He noted that the plaintiff had pleaded no specific facts about Corizon or its corporate conduct, and she had not identified any specific policy, custom, or practice that allegedly resulted in the denial of treatment.  She did allege that Dr. Papendick denied a referral for off-site treatment because of cost concerns, and she also attributed his denial of off-site care to alleged retaliation against her for a complaint and grievance that she had filed.  However, nothing in the complaint plausibly suggests that either of those decisions were endorsed under any policy promulgated or adhered to by Corizon either officially or unofficially.

The Court agrees that the pleadings disclose no basis for any viable *Monell* claim, and the objection to dismissal of the claims against Corizon Health will be **OVERRULED**.

### ii. Dr. Robert Lacy

The Corizon defendants also moved for dismissal of the deliberate indifference claims against Dr. Robert Lacy.  As the magistrate judge noted, the complaint only mentioned Dr. Lacy by name in a single terse allegation, which reads in full as follows:

> On or about 5/2/2018 Dr. Lacey [sic] came to see me and lied to me about the genetic testing being done to the actual tumor remove [sic] on 11/24/2017. He

> stated he had paperwork in his computer that said I did in fact have the LYNCH [sic] and that I need no more testing done. I told him to lie to someone who is seriously ill about having additional diagnosis [sic] without solid evidence is inhumane.

Compl. ¶ 86, ECF No. 1, PageID.19.  The reference to "LYNCH" evidently denotes the plaintiff's diagnosis with Lynch Syndrome, which is a medical condition that makes a person more likely to develop certain forms of cancer.

As noted above, the right to adequate treatment allegedly violated here is secured by the Eighth Amendment, which "prohibits the imposition of 'cruel and unusual punishments' upon prisoners." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting U.S. Const. amend. VIII).  "'[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Richmond v Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  "An Eighth Amendment claim on these grounds is comprised of an objective and a subjective component." *Id.* at 937-38.  "Thus, 'a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.'" *Id.* at 938 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"'[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ibid.* (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)).  "The subjective component requires a showing that the 'official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Id.* at 939 (quoting *Farmer*, 511 U.S. at 837).  "'[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Ibid.* "Failure

by . . . jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component of an Eighth Amendment violation." *Ibid.*

The plaintiff insists that a "generous reading" of her *pro se* pleading, along with additional facts suggested by materials that were not attached to the complaint, which first were submitted to the Court as exhibits of her brief opposing the motion to dismiss, plausibly suggest that Dr. Lacy was a "supervisor," that he "would have been involved" in decisions to grant or deny referrals for offsite treatment, e.g., for the plaintiff's diagnosis of colon cancer, and that the allegations that Dr. Papendick denied such referrals ought to be generously regarded as also implicating Dr. Lacy.  But none of those circumstances were described in the complaint, and, as the magistrate judge correctly noted, the Court's assessment of the sufficiency of the pleadings must be confined to the pleadings themselves, and the facts stated therein.  Of course, the Court is obligated to afford the *pro se* pleader some latitude for inartful framing of her claims, and "a *pro se* litigant's complaint must be construed liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, "[t]he leniency granted to *pro se* [litigants] . . . is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).  The plaintiff's expansive reading of the sparse allegations against Dr. Lacy ranges too far beyond the prudent boundaries of liberal construction.

Nothing within the borders of the complaint or the documents that were attached to it plausibly suggests that Dr. Lacy knowingly disregarded any objectively serious medical need for treatment.  As the magistrate judge aptly surmised, "it is not clear how Dr. Lacy's lie about testing that confirmed a diagnosis that plaintiff actually has amounts to a conscious disregard of a risk of harm to plaintiff and a constitutional violation."  Nothing in the complaint's minimalistic depiction of Dr. Lacy's conduct approaches a plausible allegation that Dr. Lacy subjectively denied or obstructed any needed medical care for the diagnosis that he allegedly "lied" about, and the

plaintiff has not cited any legal authority supporting the proposition that merely misrepresenting a diagnosis rises to the level of a constitutional injury, absent some plausible and specific facts alleged to suggest that the misrepresentation precipitated a denial of care. *Knox v. Davis*, 2012 WL 6212636, at *3 (E.D.N.C. Dec. 13, 2012), *aff'd*, 516 F. App'x 287 (4th Cir. 2013) ("Plaintiff's protests that defendants 'lied' or that the tests were 'wrong' are, without more, simply insufficient to state a claim that defendants were deliberately indifferent.").

The plaintiff contends that the magistrate judge improperly disregarded her supplemental materials, which were not attached to or necessarily incorporated into the pleadings. But it is well settled that assessment of the facial sufficiency of the pleadings is confined to just that; the pleadings, and documents either actually or necessarily incorporated within. *Commercial Money Ctr.*, 508 F.3d at 335-36. The extraneous materials that the plaintiff cites as supporting her claims do not qualify on either score. If the plaintiff believes that she has good grounds for seeking leave to amend her pleadings and expand the allegations against Dr. Lacy, then she should have filed a motion to amend under Rule 15, not a brief opposing a motion to dismiss.

The facts stated in the complaint do not make out any plausibly pleaded cause for deliberate indifference against Dr. Lacy, and the plaintiff's objection to dismissal of the claims against him is **OVERRULED**.

### III.

The plaintiff failed adequately to plead claims against Corizon Health and Dr. Robert Lacy. She concedes that the claims against defendant Robinson should be dismissed without prejudice. She does not object to the dismissal of her claims under the First and Fourteenth Amendments and the ADA. Some of her grievances in dispute properly were exhausted, but others were not. The claims based on those that were not will be dismissed without prejudice.

Accordingly, it is **ORDERED** that the reports and recommendations of the magistrate judge (ECF No. 48, 49) are **ADOPTED IN PART**.  The plaintiff's objections (ECF No. 50, 51) are **SUSTAINED IN PART AND OVERRULED IN PART**.

It is further **ORDERED** that the MDOC defendants' motion for partial summary judgment (ECF No. 34) is **GRANTED IN PART**, and the Corizon defendants' motion to dismiss and for partial summary judgment (ECF No. 35) is **GRANTED IN PART**.

It is further **ORDERED** that the plaintiff's claims of discrimination and retaliation under the First and Fourteenth Amendments and the ADA are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that all of the plaintiff's claims against defendants Corizon Health and Dr. Robert Lacy are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that all of the plaintiff's claims against defendant Ms. Robinson are **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the plaintiff's Eighth Amendment claims based on grievances WHV-17-05-2328-28E and WHV-17-06-2557-28E are **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the defendants' motions are **DENIED** in all other respects.

It is further **ORDERED** that the referral of the matter to the assigned magistrate judge is **CONTINUED** under the previously issued order of reference (ECF No. 52).

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  November 25, 2020